IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

FILED
IN THIS OFFICE
OCT 01 2015
Clerk U.S. District Court
Greensboro, NC
BY

CHARLES M. IVEY, III,            )
as Chapter 7 Trustee for the     )
Estate of JAMES EDWARDS          )
WHITLEY,                         )
                                 )
       Plaintiff-Appellant,      )
                                 )
       v.                        )        1:14CV1067
                                 )
FIRST CITIZENS BANK AND          )
TRUST COMPANY,                   )
                                 )
       Defendant-Appellee.       )

### AMENDED MEMORANDUM OPINION AND ORDER[1]

**OSTEEN, JR., District Judge**

This appeal is from a judgment of the United States
Bankruptcy Court for the Middle District of North Carolina.
Plaintiff Charles M. Ivey, III ("Plaintiff") is appealing the
Bankruptcy Court's December 8, 2014 Order in which the
Bankruptcy Court granted Defendant First Citizens Bank and Trust
Company's ("Defendant") summary judgment motion. For the reasons
set forth below, the Bankruptcy Court's grant of summary
judgment will be affirmed.

---

[1] The Memorandum Opinion and Order is amended to correct a
typographical error.

# I.  **INTRODUCTION**

This case arises out of the bankruptcy of James Edward Whitley ("Debtor"), who was engaged in a Ponzi scheme[2] disguised as a factoring business.[3] (Notice of Appeal, Memorandum Opinion ("Mem. Op.") (Doc. 1) at 5.)[4] Plaintiff, as the Chapter 7 Trustee for the Bankruptcy Estate of Debtor, filed the action underlying the present appeal against Defendant. In an Adversary

---

[2] "The term Ponzi scheme is the namesake of Charles Ponzi, a renowned Boston swindler, and refers to a phony investment plan in which monies paid by later investors are used to pay artificially high returns to the initial investors, with the goal of attracting more investors." United States v. Godwin, 272 F.3d 659, 665 n.3 (4th Cir. 2001).

[3] As set out in United States v. Wachovia Corp.:

Factoring is a process by which business enterprises acquire more capital and keep their own capital turning over faster. A factor purchases the accounts receivable without recourse but at a discount, and then collects the accounts. This enables the factor's customer to get his money out of his accounts receivable without delay. Although not strictly a lending business, it serves a credit-related purpose by putting the factor's assets to work instead of requiring borrowing from other sources by the factor's customers.

313 F. Supp. 632, 636 (W.D.N.C. 1970).

[4] All citations in this Memorandum Opinion and Order to documents filed with the court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

- 2 -

Proceeding, Plaintiff filed a Complaint against Defendant on April 27, 2012, asserting three claims: (1) civil conspiracy, (2) fraudulent transfer, and (3) unfair and deceptive trade practices. (Complaint ("Compl.") (Doc. 5).) On June 27, 2012, Defendant filed a Motion to Dismiss pursuant to Rules 12(b)(1) and 12(b)(6). (Id., Attach. (Doc. 5-8).) On February 7, 2013, the Bankruptcy Court granted Defendant's motion to dismiss as to the two state law claims of (1) civil conspiracy and (2) unfair and deceptive trade practices. (Doc. 3-7.) Defendant subsequently filed a motion for summary judgment on the remaining claim on May 6, 2014. (Doc. 5-18.) In a Memorandum Opinion dated December 8, 2014, the Bankruptcy Court granted Defendant's motion for summary judgment as to the remaining claim of fraudulent transfer. (Mem. Op. (Doc. 1) at 5-10.)

Plaintiff timely appealed the Bankruptcy Court's grant of summary judgment to this court on December 18, 2014. (Notice of Appeal (Doc. 1).) Plaintiff filed a Brief in support of his appeal on March 11, 2015. (Doc. 16.) Defendant filed a Brief (Doc. 18) on April 10, 2015, and Plaintiff filed a Reply (Doc. 19) on April 27, 2015. This action is thus ripe for review.

## II.  **LEGAL STANDARD**

This appeal is brought pursuant to 28 U.S.C. § 158(a) and Rule 8001 of the Federal Rules of Bankruptcy Procedure. On appeal from the Bankruptcy Court, this court functions as an

appellate court and reviews the Bankruptcy Court's findings of
fact for clear error and conclusions of law de novo. In re
Merry-Go-Round Enters., Inc., 400 F.3d 219, 224 (4th Cir. 2005).
This court reviews the grant of summary judgment de novo. See
Hager v. Gibson, 109 F.3d 201, 207 (4th Cir. 1997). The district
court may affirm, modify, or reverse a Bankruptcy Judge's order,
or remand with instructions for further proceedings. See 11
U.S.C. § 158(a) (2012); Fed. R. Bankr. P. 8001, 9002(2).

## III. **FACTUAL BACKGROUND**

As part of a Ponzi scheme, Debtor utilized a personal bank
account in his own name at one of Defendant's branch banks to
deposit funds. (Notice of Appeal (Doc. 1) at 5-6.) During the
two years preceding the filing of involuntary Chapter 7
bankruptcy proceedings against Debtor, Debtor's account at
Defendant bank received eleven deposits at issue, six checks and
five credits, via wire or telephone transfer, all of which

- 4 -

allegedly relate to Debtor's Ponzi scheme activity.[5] (Id. at 6.)
Plaintiff asserts that these deposits, as transfers, can be
avoided pursuant to 11 U.S.C. § 548(a)(1)(A) or, alternatively,
pursuant to 11 U.S.C. § 544 and the North Carolina fraudulent
transfer statutes. (Id.) Defendant argues summary judgment in
its favor is appropriate based on two theories: (1) the
transfers into the bank account were made by third parties into
Debtor's account and therefore are not transfers made by the
Debtor, and (2) the transfers did not diminish the bankruptcy
estate. (Def.'s Mot. for Summ. J. (Doc. 5-18) at 3.) In granting
the motion for summary judgment, the Bankruptcy Court

> [r]eject[ed] the proposition that the deposit of the
> checks by or on behalf of the Debtor and the
> subsequent processing of the checks and wire transfers
> did not result in transfers of property of the Debtor
> to the [Defendant], [but] the court agree[d] that the
> transfers to the [Defendant] that did occur involving
> the checks and money orders did not diminish the
> bankruptcy estate.

_____

[5] Defendant notes a discrepancy in the number of deposits at
issue on this appeal. (Br. of Appellee (Doc. 18) at 12 n.1.)

> The Bankruptcy Court ruled on the eleven deposits
> identified in FCB's [First Citizens Bank and Trust]
> summary judgment brief. Appellant's Brief identifies a
> twelfth deposit, a cash deposit for $2000 made on 21
> January 2009. Because this deposit was not identified
> or included in the Bankruptcy Court's decision, it
> should not be considered on appeal.

(Id. (citations omitted).) Because this court's decision does
not depend on specific deposits, this court finds no need to
resolve this discrepancy.

- 5 -

(Mem. Op. (Doc. 1) at 7.) For this reason, the Bankruptcy Court granted summary judgment in favor of Defendant.

Plaintiff filed the present appeal and submitted a single issue for this court to consider:

> Whether, in order to survive summary judgment on his fraudulent transfer claims, the appellant-trustee must prove that the transfers of checks or wire transfers that were made to First Citizens diminished the assets of the bankruptcy estate?

(Br. of Appellant (Doc. 16) at 14.) Plaintiff goes on to argue that:

> In requiring a diminution of estate assets, the Bankruptcy Court fashioned a new implied element, which is totally unsupported by the statutory text, and contrary to established Fourth Circuit precedent.

(Id. at 20.)

## IV. <u>ANALYSIS</u>

This court concludes that the Bankruptcy Court did not err in citing the lack of diminution of the estate to support the grant of summary judgment.

In outlining what constitutes an avoidable transfer, Bankruptcy Code § 548(a)(1)(A), Fraudulent transfers and obligations, provides:

> The trustee may avoid any transfer (including any transfer to or for the benefit of an insider under an employment contract) of an interest of the debtor in property, or any obligation (including any obligation to or for the benefit of an insider under an employment contract) incurred by the debtor, that was made or incurred on or within 2 years before the date

- 6 -

of the filing of the petition, if the debtor
voluntarily or involuntarily—

> (A) made such transfer or incurred such
> obligation with actual intent to hinder, delay,
> or defraud any entity to which the debtor was or
> became, on or after the date that such transfer
> was made or such obligation was incurred,
> indebted; . . . .

11 U.S.C. § 548(a)(1)(A) (2012). The parties do not dispute that
the transfers in question fall under § 548(a)(1)(A) or that
Debtor was involved in a Ponzi scheme. "A majority of federal
courts have held that proof of operation of a Ponzi scheme is
sufficient to establish actual intent to hinder, delay, or
defraud creditors so as to permit avoidance as a fraudulent
transfer under section 548(a)(1)(A)." In re Whitley, 463 B.R.
775, 781 (Bankr. M.D.N.C. 2012). That Debtor here was
effectuating a Ponzi scheme satisfies the actual intent prong of
§ 548(a)(1)(A).

Given this analysis of § 548(a)(1)(A), the Bankruptcy Court
discussed why these transfers nonetheless do not qualify as
fraudulent transfers under § 548(a)(1)(A). In explaining its
grant of summary judgment, the Bankruptcy Court found that

> [T]he transfers to the Bank in this case resulting from
> the deposits of the checks and wire transfers were
> not fraudulent transfers because . . . they did not
> diminish the Debtor's estate nor place the funds
> involved in the transfers beyond the reach of
> creditors. The critical facts underlying this result are
> that (1) the transfers to the Bank made or caused to be
> made by the Debtor were to a bank account belonging to the
> Debtor and (2) such account was an ordinary checking

- 7 -

account in which the funds in the account were readily
available to the Debtor.

(Mem. Op. (Doc. 1) at 8.) The transfers that Plaintiff wants

avoided pursuant to § 548 are listed in Defendant's summary

judgment brief, (Def.'s Mem. of Law in Supp. of Mot. for Summ.

J. (Doc. 6) at 2), and as found by the Bankruptcy Court, are all

credits to Debtor's checking account at Defendant's bank. (Mem.

Op. (Doc. 1) at 6.) The transfers in question do not cause any

diminution of the estate and would otherwise be available for

administration.[6]

Section 101 of the Bankruptcy Code defines the term

"transfer" to include "an interest of the debtor in property."

11 U.S.C. § 101(54)(D)(ii).[7] Section 548 also defines a

_____

[6] Plaintiff does argue that the transfers diminished the
estate. This court disagrees for reasons explained hereafter.

[7] In full, § 101(54) provides:

> The term "transfer" means--
> (A) the creation of a lien;
> (B) the retention of title as a security
>     interest;
> (C) the foreclosure of a debtor's equity of
>     redemption; or
> (D) each mode, direct or indirect, absolute or
>     conditional, voluntary or involuntary, of
>     disposing of or parting with--
>     (i)  property; or
>     (ii) an interest in property.

11 U.S.C. § 101(54)(A)-(D) (2012).

fraudulent transfer as a "transfer . . . of an interest of the debtor in property." 11 U.S.C. § 548(a)(1)(A). In keeping with established principles of statutory construction "requir[ing] a court to construe all parts to have meaning and to reject constructions that render a term redundant," PSINet, Inc. v. Chapman, 362 F.3d 227, 232 (4th Cir. 2004),[8] this court does not read the inclusion of "an interest of the debtor in property" in both § 101 and § 548 to be redundant or without meaning.

In reworking the Bankruptcy Code, Congress sought to make "[t]he definition of transfer [] as broad as possible," drafting it to include "any transfer of an interest in property,"

_____

[8] The Fourth Circuit provided extensive citations in support. PSINet, 362 F.3d at 232 (citing Reiter v. Sonotone Corp., 442 U.S. 330, 339 (1979) (where the Supreme Court explained that a court is "obliged to give effect, if possible, to every word"); Platt v. Union Pac. R.R. Co., 99 U.S. 48, 58-59 (1878) (if a construction renders a term redundant, that is a reason for rejecting that construction); Virginia v. Browner, 80 F.3d 869, 877 (4th Cir. 1996) (a court should not "construe a statute in a manner that reduces some of its terms to mere surplusage"); United States v. Snider, 502 F.2d 645, 652 (4th Cir. 1974) (all parts of a statute must be construed so that each part has meaning)). Other circuits have similar interpretations of the requirements of statutory construction. See, e.g., Scherr v. Marriott Int'l, Inc., 703 F.3d 1069, 1077 (7th Cir. 2013) ("When we do not have statutory definitions available, 'we . . . view words not in isolation but in the context of the terms that surround them; we likewise construe statutes in the context of the entire statutory scheme and avoid rendering statutory provisions ambiguous, extraneous, or redundant; we favor the more reasonable result; and we avoid construing statutes contrary to the clear intent of the statutory scheme.'" (quoting In re Merchants Grain, Inc., 93 F.3d 1347, 1353-54 (7th Cir. 1996)).

- 9 -

including "[a] deposit in a bank account or similar account."
S. Rep. No. 95-989, at 27 (1978); see also § 101(54). Thus,
Debtor here, who deposited into his own account, did effectuate
a transfer under § 101 and, due to the Ponzi presumption, is
deemed to have the requisite fraudulent intent under § 548.
However, § 548 appears to require more, as Congress drafted
§ 548 to also require a fraudulently intended transfer "of an
interest of the debtor in property." § 548. While the Code
itself does not define the phrase "interest of the debtor in
property," the courts have. "The phrase 'interest of the debtor
in property' 'is best understood as that property that would
have been part of the estate had it not been transferred before
the commencement of bankruptcy proceedings.' " In re
BeaconVision, Inc., 340 B.R. 674, 677 & n.2 (Bankr. D.N.H. 2006)
(quoting Begier v. IRS, 496 U.S. 53, 58 (1990)) (noting in
footnote 2: "The Supreme Court read the phrases 'property of the
debtor' and 'an interest of the debtor in property'
'coextensive[ly]' and '[f]or guidance' looked 'to § 541, which
delineates the scope of 'property of the estate'" (quoting

Begier, 496 U.S. at 58-59 & n.3)).[9] This definition of "interest of the debtor in property" under § 548 means:

> A bankruptcy trustee can recover for the bankruptcy estate transfers made by a debtor by demonstrating the transferred property was "of an interest of the debtor in property." "[A]ny funds under the control of the debtor, regardless of the source, are properly deemed to be the debtor's property, and any transfers that diminish that property are subject to avoidance." A debtor must have exercised "sufficient control over the funds to warrant a finding that the funds were the

_____

[9] Although Beiger v. Internal Revenue Service analyzed § 547(b), the terminology in § 548 is the same and thus the Court's holdings regarding "an interest of the debtor in property" apply to both sections equally. See Bear, Stearns Sec. Corp. v. Gredd, 275 B.R. 190, 193-94 (S.D.N.Y. 2002) ("[T]he Supreme Court . . . ha[s] interpreted the identical statutory language — 'an interest of the debtor in property' — in the manner advocated . . . . In Begier, the Supreme Court stated that 'property of the debtor' . . . is 'that property that would have been part of the estate had it not been transferred before the commencement of bankruptcy proceedings.' While Begier and its progeny were concerned with § 547 . . . , the 'normal rule of statutory construction that identical words used in different parts of the same act are intended to have the same meaning,' counsels us to construe this language to have the same meaning when it is used in § 548(a)(1)(A)." (citations omitted)).

Notably, in In re French, the Fourth Circuit also applies Begier's interpretation of "interest of the debtor in property" in § 547 to § 548, but In re French is distinguishable from the matter at hand as it addressed foreign real property in the context of § 548(a)(1)(B). In re French, 440 F.3d 145, 151-52 (4th Cir. 2006) ("Section 541 defines 'property of the estate' as, inter alia, all 'interests of the debtor in property.' In turn, § 548 allows avoidance of certain transfers of such 'interest[s] of the debtor in property.' By incorporating the language of § 541 to define what property a trustee may recover under his avoidance powers, § 548 plainly allows a trustee to avoid any transfer of property that would have been 'property of the estate' prior to the transfer in question — as defined by § 541 — even if that property is not 'property of the estate' now." (other citations omitted)(citing Begier v. IRS, 496 U.S. 53, 58, 59 n.3 (1990))).

- 11 -

debtor's property." . . . . The purpose of avoiding fraudulent transfer actions is to prevent a debtor from diminishing property that properly belongs to all creditors.

In re Pearlman, 472 B.R. 115, 125-26 (Bankr. M.D. Fl. 2012) (alteration in original)(footnotes and citations omitted).

Consequently, the parties and this court have addressed this issue primarily as an issue of diminution of the estate, and this court is of the opinion that such a purpose is reflected in the statutory construction of § 548. Because the statute requires not just a "transfer," § 101, (i.e., a transfer by a debtor of currency from a safe in his home to a deposit bank account would be a transfer, § 101; S. Rep. No. 95-989, at 27 (1978)), but a "transfer of an interest of the debtor in property," § 548, a transfer would not necessarily be a fraudulent conveyance under § 548. This construction simply recognizes that a transfer is not subject to avoidance if it did not or could not diminish the estate, reflecting that the interest of the debtor in such property did not change. Thus, because the Debtor here merely effectuated transfers to himself within the estate, the § 548 phrase "interest of the debtor in property" eliminates his actions from its scope, since his actions had no actual or potential diminutive effect on the bankruptcy estate. See In re BeaconVision, 340 B.R. at 677. As a result, this court does not find that the Bankruptcy Court added

- 12 -

an element to the fraudulent transfer claim, expressly or impliedly.

In addition to the statutory basis, the Bankruptcy Court's grant of summary judgment based on a finding that there was no diminution of the estate also recognizes past bankruptcy practice as stated in New York Cty. Nat'l Bank v. Massey, 192 U.S. 138, 147 (1904) ("These transfers of property, amounting to preferences, contemplate . . . the consequent diminution of the bankrupt's estate. . . . [A] deposit of money to one's credit in a bank does not operate to diminish the estate . . . ."), and presently recognized in In re Derivium Capital LLC, 716 F.3d 355, 361 (4th Cir. 2013) ("The purpose of the Bankruptcy Code's avoidance provisions is to prevent a debtor from making transfers that diminish the bankruptcy estate to the detriment of creditors."). The Bankruptcy Court's holding is in keeping with the Supreme Court's reluctance to "interpret the Code . . . to effect a major change in pre-Code practice that is not the subject of at least some discussion in the legislative history." Dewsnup v. Timm, 502 U.S. 410, 419 (1992).

Consideration of actual or potential diminution of the estate recognizes that "[w]hether the goal is to protect some creditors, as in the case of § 547, or all creditors, as in the case of § 548, only asset transfers that may have actually harmed creditors may be avoided." Bear, Stearns Sec. Corp., 275

- 13 -

B.R. at 194. The Fourth Circuit has not explicitly addressed this diminution issue, but "[t]he purpose of the Bankruptcy Code's avoidance provisions is to prevent a debtor from making transfers that diminish the bankruptcy estate to the detriment of creditors." Derivium, 716 F.3d at 361.

Although the Fourth Circuit has not explicitly addressed this diminution issue,[10] other courts have. "A diminution of estate issue rarely arises in the context of fraudulent transfers because there is usually no question that the fraudulent transfer depleted the estate of the debtor in the amount of the transfer." In re Consol. Pioneer Mortg. Entities, 211 B.R. 704, 717 (S.D. Cal. 1997). The Pioneer court went on to state:

> [Plaintiff] argues that "depletion of the estate" is not an element of proof in the fraudulent transfer statute. Although there is no formal "diminution of estate" requirement in the statutory language, the purpose of fraudulent transfer recovery is to prevent a debtor from putting assets otherwise available to its creditors out of their reach: "In our quest to understand fraudulent transfer liability, we often overlook first principles. At its core, fraudulent transfer law is a debt-collection device and not a revenue generating tool; its mission is to prevent the unjust diminution of the debtor's estate."
>
> The "diminution of estate" or "depletion of the estate" concept usually arises in connection with preferences. . . . The purpose of fraudulent transfer law is to protect creditors from last-minute

---

[10] However, the Fourth Circuit addresses the general issue of what an interest of the debtor in property entails under § 548(a)(1)(B) in In re French, as discussed in supra note 9.

- 14 -

diminutions of the pool of assets in which they have interests.

Id. at 717 (citations omitted).

Plaintiff relies on several decisions to support his contention that "diminution of the estate is not an element of a fraudulent transfer claim, and was therefore irrelevant to the Bankruptcy Court's analysis." (Br. of Appellant (Doc. 16) at 24.) This court is not persuaded by Plaintiff's reliance on these cases in support of a proposition that a transfer that does not diminish the estate, as on these present facts, is nonetheless a fraudulent transfer under § 548.

Plaintiff cites In re Model Imperial, Inc., 250 B.R. 776 (Bankr. S.D. Fla. 2000). (Br. of Appellant (Doc. 16) at 24-25.) The Model court does state that "if diminution of the estate were an essential element of a § 548(a)(1) claim, then § 548(a)(2) would be redundant." In re Model Imperial, Inc., 250 B.R. at 793-94. However, in finding the transfers in question not avoidable, the Model court goes on to state that, with regard to some of the transfers that did not negatively affect the estate, the "alleged fraudulent transfers are not avoidable because in economic reality, they were a nullity." Id. at 797. The "economic nullity" in Model is strikingly similar to Debtor's bank deposits into his own checking account in the present action. Debtor transferred money or credit into his own

- 15 -

bank account with no discernable impact on the estate.
"[B]ankruptcy courts are courts of equity, and as such, 'they
possess the power to delve behind the form of the transactions
and the relationships to determine the substance.'" Id. at 796
(citations omitted). The substance of the present transfers at
issue seems to be, like those in Model, an "economic nullity"
not eligible for avoidance.

Plaintiff also cites two Fourth Circuit cases for
"reject[ing]" the diminution of estate prong of fraudulent
transfer: Tavenner v. Smoot and In re Mahaffey. (Br. of
Appellant (Doc. 16) at 27-29.) This court does not agree with
Plaintiff's contention that these cases do not take into account
the effect on the estate when considering fraudulent transfer
claims.

Tavenner v. Smoot, 257 F.3d 401 (4th Cir. 2001), is
distinguishable because the transfers at issue, even though they
involved otherwise-exempt property, were made in such a manner
(largely to third parties) as to remove the assets from the
estate. In contrast, Debtor here transferred funds into the
estate and the transfers at issue did nothing to actually or
potentially diminish the estate.

Further, the transfers at issue in Tavenner involved
exemptible property under Virginia law. The defendant argued
those transfers could not qualify under § 548 because "it is

- 16 -

impossible to hinder, delay or defraud creditors by transferring property to which the creditors were not entitled in the first place." Id. at 407. The Fourth Circuit agreed with the majority position that transfers of exempt property are amenable to avoidance actions, stating that "[n]othing in § 548 indicates that a trustee must establish that a fraudulent conveyance actually harmed a creditor," id., and recognizing that "if a debtor enters into a transaction with the express purpose of defrauding his creditors, his behavior should not be excused simply because, despite the debtor's best efforts, the transaction failed to harm any creditor." Id. (citations omitted).

However, more pointedly to this case, in Tavenner's rejection of the "no harm, no foul" approach, the Fourth Circuit focused on the fact that:

> Under a statutory scheme in which all property is presumed to be part of the bankruptcy estate, and no property is exempt until such time as the debtor claims an exemption for it, creditors can be harmed by transfers of potentially exempt property because it is not a foregone conclusion that such property will be exempt from the estate.

Id.

Section 548, as analyzed by the Fourth Circuit in Tavenner, does not require actual harm to establish a fraudulent

- 17 -

transfer.[11] Nevertheless, _Tavenner_ is consistent with both § 548 and past bankruptcy practice because there is no indication from _Tavenner_ that the type of transfer or effect on the estate is irrelevant to the Fourth Circuit's analysis. Contrary to Plaintiff's argument, _Tavenner_ discusses the potential or actual effect on the estate. Under this analytical structure, while actual harm is not required to establish a § 548 fraudulent transfer, the actual or potential effect of a transfer is relevant. Notably, the potential effect on the estate described in _Tavenner_ is a potential diminution in value, should the debtor not have exempted the property from the estate. _See_ _id._ at 406-07.[12] By focusing on a transfer's potential to harm the estate as a basis for its inclusion under the purview of § 548, _see_ _id._, the Fourth Circuit illustrates that reasoning and the statutory text do not support a fraudulent transfer analysis completely divorced from the actual or potential diminution of the estate. As such, this court does not agree with Plaintiff's

---

[11] In _Tavenner_, the Fourth Circuit first discusses its rejection of the "no harm, no foul" approach and then discusses specific intent and harm under § 548 in the immediately following section. _See_ _Tavenner_, 257 F.3d at 406-07. The Circuit's reasoning in both analyses supports this opinion.

[12] Notably, _Tavenner_ also analyzes how the transfer of this property is a removal of property from the estate, notwithstanding its exemptible status, because, as quoted _supra_, all property remains part of the estate until the debtor actually claims an exemption. _See_ _Tavenner_, 257 F.3d at 406.

- 18 -

contention that the Bankruptcy Court's discussion of diminution of the estate is inconsistent with <u>Tavenner</u>.

Similarly, in rejecting the "no harm, no foul" rule in <u>In re Mahaffey</u>, the Fourth Circuit stated that:

> [T]he "no harm, no foul" approach seemed more appropriate under the old Bankruptcy Act, in which exempt property was not part of the bankruptcy estate. Under the new Bankruptcy code, in contrast, all property, including potentially exempt property, is part of the estate until the debtor claims an exemption. Consequently, a transfer of potentially exempt property could harm creditors.

<u>In re Mahaffey</u>, No. 95-2411, 1996 WL 383922, at *2 (4th Cir. 1996) (citations omitted). Again, this court does not find any indication in <u>Mahaffey</u> that the Fourth Circuit did not consider the actual or potential effect of a transfer on the estate in addressing the fraudulent transfer claim. To the contrary, the Fourth Circuit emphasizes that the property was part of the estate unless or until an exemption was claimed and thus the transfer was significant. In focusing on the changed Bankruptcy Code, the Fourth Circuit's analysis illustrates the principle articulated in <u>Tavenner</u>—that the transfer <u>could</u> result in diminution to the estate and thus could be avoidable under § 548.

Thus, given the text of § 548, prior bankruptcy practice, and corresponding Fourth Circuit precedent, Plaintiff has not persuaded this court that the Bankruptcy Court's consideration of no actual or potential diminution of the estate was improper.

- 19 -

In the alternative, Plaintiff asserts that the bankruptcy estate was in fact diminished by the transfers at issue. (Br. of Appellant (Doc. 16) at 29-30.) This court does not find this argument persuasive on the facts present.

In a case still cited by courts and referenced by the Bankruptcy Court here, the United States Supreme Court addresses the impact of a bank deposit on an estate in the bankruptcy context.

> As we have seen, a deposit of money to one's credit in a bank does not operate to diminish the estate of the depositor, for when he parts with the money he creates at the same time, on the part of the bank, an obligation to pay the amount of the deposit as soon as the depositor may see fit to draw a check against it. It is not a transfer of property as a payment, pledge, mortgage, gift, or security.

New York Cty. Nat'l Bank v. Massey, 192 U.S. at 147. Plaintiff contends that "[t]he Bankruptcy Court's reliance upon Massey was entirely misplaced. Massey addressed a preference claim under the former Bankruptcy Act of 1898." (Br. of Appellant (Doc. 16) at 21.) Plaintiff relies on Meoli v. Huntington Nat'l Bank (In re Teleservices Grp., Inc.), 469 B.R. 713 (Bankr. W.D. Mich. 2012), for the proposition that Massey is not currently viable. (Br. of Appellant (Doc. 16) at 21-23.)

> Teleservices Group makes clear . . . why Massey dealt only with a preference under the old Act, back when diminution was still a recognized element. The Massey decision is simply not applicable anymore when addressing issues under the current Bankruptcy Code's fraudulent transfer provisions.

- 20 -

(Id. at 23.) Defendant counters that:

> The Teleservices court ultimately concluded that
> Massey's analysis of preferential set-offs had become
> "an anachronism" because the Bankruptcy Code addressed
> such setoffs by adding 11 U.S.C. § 553(b). Notably,
> however, it did not, as the Trustee suggests, reject
> as improper or no longer valid Massey's determination
> that a bank account deposit does not diminish the
> bankruptcy estate.

(Br. of Appellee (Doc. 18) at 29-30.) This court is not

persuaded that Plaintiff's argument regarding Massey's

inapplicability makes Massey invalid for the proposition upon

which the Bankruptcy Court relied.[13] Of note are the

distinguishable facts and findings of Teleservices.

In Teleservices, the transfer in question placed funds in

the benefit of the depositor and the defendant bank because an

agreement allowed the bank to use the funds to offset debt at

the bank. Teleservices, 469 B.R. at 719. Although ultimately the

court found the defendant bank liable on the basis of transferee

liability, id. at 747, 767, Teleservices explicitly addresses

the estate diminution issue:

> Indeed, diminution of the estate is not even an
> issue when the liability of a transferee under Section
> 550 is being assessed. But then, this court sees no
> reason why it should be a factor given that diminution

---

[13] Albeit in a different context, the Supreme Court noted
the relevance of prior bankruptcy to current bankruptcy code.
"When Congress amends the bankruptcy laws, it does not write 'on
a clean slate'". Hall v. United States, 566 U.S. ____, ____, 132
S. Ct. 1882, 1893 (2012)(quoting Dewsnup, 502 U.S. at 419).

of the estate is relevant only with respect to the
        initial transfer and then only as to its avoidability.

Teleservices, 469 B.R. at 742. Absent evidence to the contrary,

and on the present facts, Plaintiff has neither persuaded this

court that Massey's holding that a deposit by a debtor into the

debtor's own checking account does not serve to diminish the

debtor's estate is an incorrect interpretation nor convinced

this court that Teleservices supports such a finding.[14] Further,

nothing in the record here indicates the estate was negatively

impacted when these deposits were made into Debtor's own

checking account at Defendant's branch bank.

        In the present action, the Ponzi presumption allows a court

to infer actual intent of fraud, but it does not negate the

relevance of actual or potential diminution of the estate to

§ 548 analysis. Further, this court finds that Debtor's deposit

of funds into an unrestricted demand checking account neither

actually diminished nor had the potential to diminish the

estate. Accordingly, the Bankruptcy Court's grant of summary

judgment on the fraudulent transfer claims will be affirmed.

_____

        [14] Notably, in Teleservices, a part of the transfers were
deposits into bank accounts that themselves served as security
for the line of credit that the defendant bank extended to
debtor. See Teleservices, 469 B.R. at 719. Therefore, whether or
not the bank actually exercised its rights against the accounts,
the deposits themselves created an actual or potential
diminution of the estate by subjecting the funds to the bank's
power under this credit agreement.

Case 1:14-cv-01067-WO   Document 24   Filed 10/01/15   Page 22 of 23

## V.    CONCLUSION

For the reasons set forth herein, **IT IS HEREBY ORDERED** that the Bankruptcy Court's grant of summary judgment (Doc. 1) is **AFFIRMED**.

This the 1 day of October, 2015.

_William L. Oster, Jr._
United States District Judge